## Kelly *against* Kelly.

Testator devised to his son and three daughters certain real estate, and directed the cash and *outstanding debts* (after payment of his debts) to be *equally* and *justly* divided amongst his four children. By a codicil reciting the death of one of his said daughters, he gave to her two children all the legacies bequeathed to her, and also gave them, "*as a part of said legacies,* the amount, or all that shall be recovered on a note for 1400 dollars, due to me by H., their father." The note stated that sum to be a part of H.'s legacy at the testator's death, and that it was to draw no interest. The executor's account showed a residuary balance of 2506 dollars 23 cents. *Held,* that the legatees in the codicil were not entitled to the amount of said note in addition to their mother's share; but that the note formed part of what had been given to their mother, and was therefore their portion of the residue of testator's personal estate, leaving the balance in the executor's hands for distribution amongst the three other legatees.

WRIT of Error to the common pleas of *York* county.

Thomas Kelly against Hugh Bigham, executor of John Kelly, deceased.

The question in this case arose upon the construction of the will of John Kelly, deceased; for the determination of which the parties agreed to the following special verdict:

On the 14th of May 1833, the defendant's testator made his will, and on the 16th of September 1834, the codicil thereto annexed, which were duly proved, and letters testamentary granted thereon in March 1835, to the defendant. By said will, testator devised to his daughter Catharine one-third part of several tracts of land, and sixty shares of York Bank stock. To each of his other two daughters he devised one-third of said tracts of land, and bequeathed like-wise sixty shares of York Bank stock. To his son Thomas he gave one tract of land and sixty shares of said stock; and directed his personal property not disposed of by his will, to be sold, and the cash and outstanding debts, after payment of debts, &c., to be equal-ly and justly divided amongst his four children, or their heirs, share and share alike. Said codicil is in these words: "Whereas my daughter Catharine is now dead, I will and bequeath to her two daughters, Margaret Chase M'Donald and Mary Kelly M'Donald, all and every of the legacies by me bequeathed to the said Catha-rine, to go directly to them in equal shares, and as tenants in com-mon; and also give and bequeath to the said Margaret and Mary, in equal shares, as a part of said legacies, the amount, or all that shall be recovered on a note or obligation for 1400 dollars, due to me by Dr Hugh M'Donald, their father."

The defendant took upon himself the execution of the trust, and filed his administration account thereof on the 14th of October 1836, by which, after deducting items No. 13, 16 and 17 on the debit side, (which items arose from land devised to testator's daughters,) the

[Kelly v. Kelly.]

note in the said codicil being credited in said account, there is a residuary balance in accountant's hands of 2506 dollars 23 cents.

The plaintiff is the son of the testator named in said will. Dr Hugh M'Donald was the husband of testator's daughter Catharine, and shortly after testator's decease became, by appointment of the orphans' court, guardian of the estate of his surviving daughter, Mary K. M'Donald. Margaret C. M'Donald died intestate in June 1835.

The note of the said M'Donald mentioned in the codicil, and credited by item No. 63 in said administration account, is in the words and figures following:

" April 15th, 1833. I promise to pay Col. John Kelly 1400 dollars, which is a part of my legacy. At his death this obligation to draw no interest by the consent of said John Kelly. Witness my hand and seal. HUGH M'DONALD." [L. S.]

If the said note of said M'Donald is by said codicil given to his children over and above their other legacies, then judgment for plaintiff for 626 dollars 55 cents.

If the plaintiff be entitled to the one-third of the whole balance of the account, as confirmed, (excepting said items, No. 13, 16 and 17, on the debit side,) said note merely preventing the legatees in the codicil from recovering until the other legatees have received an amount equal to the note, then judgment for him for 835 dollars 41 cents.

If the plaintiff be entitled to one-fourth part of the whole balance, (after deducting said items, No. 13, 16 and 17, on the debit side,) and adding to it the amount of the note in question, then judgment for plaintiff for 976 dollars 55 cents.

The court below (Durkee, president) rendered a judgment for 835 dollars 41 cents.

Error assigned.

Judgment should have been for 626 dollars 55 cents.

*Barnitz*, for plaintiff in error.
*Chapin*, for defendant in error.

The opinion of the Court was delivered by

KENNEDY, J.—In May 1833, when the testator made his will, he had one son and three daughters, making in all, four children. It would seem, from the tenor of the will, that it was his intention to give his three daughters equal portions of his estate. The terms of the will indicate this very clearly, and the devises and bequests therein made to them appear to be in exact accordance with such intention. A short time, however, before the making of his will, in the preceding month, the testator advanced to his son-in-law, Doctor Hugh M'Donald, the husband of his daughter Catharine, 1400 dollars, and took from him his single bill, promising to pay the same to the testator; which is therein stated to be a part of the

legacy of the said Hugh at the death of the testator; and that it is to draw no interest. By the will the testator gave to his son, the plaintiff below, his mansion plantation, containing about nine hundred acres, with the appurtenances, which was probably a more valuable portion of his real estate than he gave to either of his daughters: but in respect to the personal estate, he seems to have wished to place them all on an equal footing with each other; for he first gives to each of them certain specific legacies out of it, of unequal value; giving to some less and to others more, because he had previously advanced less to the latter than to the former; and by this means he intended to make them all participate equally in what he considered was only a part of his personal estate: he then, in so many words, directs that the residue thereof, consisting of " cash and outstanding debts," shall be equally divided among his four children, naming them. No specific notice is taken in the will of the 1400 dollars, previously advanced to his son-in-law, Doctor M'Donald; but from the design of the testator, as evidenced by his will, to make his children, and especially his daughters, equal participants in his personal estate, it would seem not only fair, but necessary, in order to effectuate this his design, to consider the 1400 dollars as intended to be embraced by him in the residue of his personal estate; which he describes as consisting of " cash and outstanding debts:" and this will also accord with the declaration contained in the obligation or bill given for the payment of it, which states it to be, in part of the Doctor's legacy, which must, as I apprehend, have been intended rather to allude to a legacy that was designed for his wife, and not for himself unconnected with her. If it be not now considered as part of the residue of the personal estate, but as an advancement to the Doctor, for and on account of his wife, over and above what is mentioned in the will, then the clear intention of the testator, throughout the whole scope and tenor of it, which was equality of donation, would thereby be defeated: but the codicil, even if his intention in regard to this were in the least doubtful, renders it perfectly manifest and certain; because, after giving to the two children of his daughter Catharine, she being then dead, what he had intended for and given by his will to their mother, he mentions the obligation of their father for the 1400 dollars, and declares in positive terms, that he bequeaths it, or *all that shall be recovered* of it, to them "*as a part* of said legacies;" meaning, clearly, as a part of what he had, by his will, given to their mother, and then, by his codicil thereto, bequeathed and given to them. He also speaks of the 1400 dollars as a debt due to him, which would seem to bring it within the terms of the residuary bequest: his words are, "a *note or obligation* for 1400 dollars, *due to me* by Doctor Hugh M'Donald, their father." It would, therefore, rather seem that he meant to include these 1400 dollars in the residue of his personal estate, as forming a part of it, when he describes it as consisting of " cash and *outstanding debts.*" If this

[Kelly v. Kelly.]

be so, then it is clear, under this view of the case, that the plaintiff below had a right to claim, as the very lowest sum coming to him, the 835 dollars 41 cents, for which judgment was entered by the court below, in his favour: but it does not appear so clear that he was entitled to recover the larger sum of 976 dollars 55 cents, claimed by him; this was the one-fourth of the residue of the personal estate, if the 1400 dollars be added and taken as a part of it. The terms of the codicil, perhaps, are not altogether free from ambiguity; for if the testator supposed, as it is possible he may, at the time of making the codicil, that the 1400 dollars would be less than one-fourth of the residue of his personal estate, including this money as a part thereof, it might then be fairly inferred that he intended to give the whole of the 1400 dollars to his granddaughters, as so much of their portion of the residue. But it may be, that instead of this, he thought it doubtful whether the 1400 dollars could be recovered from their father, and therefore intended that they should receive the whole of it, if they could obtain it; but nothing else or more, in any event, out of the residue of his personal estate, unless it should happen to exceed in amount four times 1400 dollars; in which event the testator probably intended they should each receive one-eighth of such excess.

But seeing the writ of error has been sued out here by the executor of the will of the testator, who was the defendant below, and it is he that complains of the judgment of the court there, and not the plaintiff, we must take it that the plaintiff below is satisfied with the judgment in his favour; and hence it would be useless and unavailing to either party to decide this latter question. We therefore express no opinion in regard to it.

Judgment affirmed.